**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Rosemarie Best,                                    No. CV-21-08021-PCT-DGC

                        Plaintiff,                 **ORDER**

v.

Commissioner of Social Security
Administration,

                        Defendant.

Plaintiff Rosemarie Best seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, which denied her claim for disability insurance benefits and supplemental security income.  For reasons stated below, the Court will vacate the decision and remand the case for further administrative proceedings.

**I.      Background.**

Plaintiff applied for social security benefits in February 2014, alleging disability as of January 13, 2013.  Administrative Transcript ("Tr.") 188-204.  An Administrative Law Judge ("ALJ") denied the claim in September 2016, and the Appeals Council denied review.  Tr. 1-4, 14-27.  In September 2018, Magistrate Judge Deborah Fine vacated the decision and remanded the case for further proceedings.  Tr. 831-57; *see* Doc. 19, *Best v. Comm'r of Soc. Sec.*, No. CV-17-08199-PCT-DMF (D. Ariz. Sept. 26, 2018).  Specifically, Judge Fine found that the ALJ erred by ignoring Plaintiff's headache symptoms and

1   rejecting the opinions of examining physician Dr. Justin Garrison and treating physician
2   Dr. Hojat Askari.  Tr. 854.

3       On remand, Plaintiff and a vocational expert testified at hearings before an ALJ on
4   July 19, 2019 and March 10, 2020.  Tr. 707-81.  On August 4, 2020, the ALJ found that
5   Plaintiff was not disabled within the meaning of the Social Security Act.  Tr. 682-97.  This
6   decision became Defendant's final decision when the Appeals Council denied review on
7   December 21, 2020.  Tr. 670-74.

8       Plaintiff then commenced this action for judicial review.  Doc. 1.  The parties briefed
9   the issues after receipt of the certified administrative transcript.  Docs. 13-16.  Because the
10  ALJ's decision is based on legal error and is not fully supported by substantial evidence,
11  the Court will vacate it.

12  **II.      Standard of Review.**

13      The Court reviews only those issues raised by the party challenging the ALJ's
14  decision.  *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The Court may vacate
15  the decision where it is based on legal error or not supported by substantial evidence.
16  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Orn v. Astrue*, 495 F.3d 625, 630
17  (9th Cir. 2007).  Substantial evidence is more than a scintilla, less than a preponderance,
18  and relevant evidence that a reasonable person might accept as adequate to support a
19  conclusion.  *Id.*  In determining whether substantial evidence supports the ALJ's decision,
20  the Court "must consider the entire record as a whole and may not affirm simply by
21  isolating a 'specific quantum of supporting evidence.'"  *Orn*, 495 F.3d at 630 (citation
22  omitted).  The ALJ is responsible for determining credibility and resolving conflicts and
23  ambiguities in the medical evidence, and the decision must be upheld where the evidence
24  is susceptible to more than one rational interpretation.  *Magallanes*, 881 F.2d at 750;
25  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  In reviewing the ALJ's reasoning,
26  the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences
27  from the ALJ's opinion."  *Magallanes*, 881 F.2d at 755.

28

**III.     The Five-Step Evaluation Process.**

Whether Plaintiff is disabled is determined using a five-step process.  Plaintiff must show that (1) she has not engaged in substantial gainful activity since the alleged disability date, (2) she has a severe impairment, and (3) her impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") – the most she can do despite her impairments – precludes her from performing past work.  If Plaintiff meets her burden at step three, she is presumed disabled and the process ends.  If the inquiry proceeds and Plaintiff meets her burden at step four, then (5) Defendant must show that Plaintiff is able to perform other available work given her RFC, age, education, and work experience.  *See* 20 C.F.R. §§ 404.1520 (disability in general); 416.920(a) (disability for adults).

Plaintiff has met her burden at steps one and two – she has not the engaged in substantial gainful activity since the alleged disability date and has multiple severe impairments: right shoulder degenerative joint disease; cervical degenerative disc disease with radiculopathy; lumbar degenerative disc disease and spondylosis; thoracic spondylosis; disorder of vestibular function; bilateral carpal tunnel syndrome; and obesity. Tr. 685-86.   The ALJ found the following impairments to be non-severe: migraine headaches, hypertension, hyperlipidemia, osteoporosis, type-2 diabetes, Schatski's Ring, hiatal hernia, biliary cirrhosis, and an acute kidney injury.  Tr. 686.  The ALJ found at step three that Plaintiff's impairments do not constitute a listed impairment.  Tr. 689.  The ALJ determined at step four that Plaintiff has the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds.  She can occasionally balance, stoop, kneel, crouch, and crawl.  She can frequently handle and finger with her bilateral hands.  She must avoid extreme cold, vibration, and hazards, including moving machinery and unprotected heights.

Tr. 690.[1]

---

[1] To determine the physical exertion requirements of work in the national economy, the Social Security Administration "classif[ies] jobs as sedentary, light, medium, heavy, and very heavy."  20 CFR §§ 404.1567, 416.967.  Light work is defined as "lifting no more

Based on this RFC, the ALJ concluded that Plaintiff is not disabled because she is able to perform her past work as a retail cashier and injection molding machine tender.  Tr. 695-96.  Given the finding that Plaintiff can perform past work, the ALJ did not determine at step five whether Plaintiff can do other jobs in light of her RFC and relevant vocational factors.  *See id.*

**IV.   Discussion.**

Plaintiff contends that: (1) the ALJ erred in rejecting Dr. Justin Garrison's finding that Plaintiff is not capable of sedentary exertion (lifting up to 10 pounds); (2) the ALJ's finding that Plaintiff's migraine headaches are non-severe is not supported by substantial evidence and the ALJ erred in failing to include migraine-related limitations in the RFC assessment; and (3) the ALJ erred in rejecting the opinions of treating physicians Dr. Hojat Askari and Dr. Kaveh Karandish.  Doc. 14 at 3-4.  Defendant argues that the ALJ committed no legal error and her decision is supported by substantial evidence.  Doc. 15 at 6-22.  The parties disagree on whether any remand should be for an award of benefits or further proceedings.  Docs. 14 at 21-22, 15 at 22-23.

**A.   Dr. Garrison.**

In deciding how much weight to give to a medical opinion, the ALJ should consider the nature and extent of the doctor-patient relationship, the extent to which the doctor presents relevant evidence to support the opinion, and whether the opinion is consistent with the record as a whole.  20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).  Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician.  *Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995).  Where, as here, the opinions of treating and examining physicians are contradicted by another doctor, the ALJ may reject those opinions by "providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

---

than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 CFR §§ 404.1567(b), 416.967(b).

1    "Specific, legitimate reasons for rejecting a physician's opinion may include its

2    reliance on a claimant's discredited subjective complaints, inconsistency with medical

3    records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily

4    activities, or that the opinion is brief, conclusory, and inadequately supported by clinical

5    findings." *Lisa L. v. Kijakazi*, No. 1:20-CV-494-SI, 2021 WL 3663068, at *8 (D. Or.

6    Aug. 18, 2021) (citations omitted).  "An ALJ errs by rejecting or assigning minimal weight

7    to a medical opinion 'while doing nothing more than ignoring it, asserting without

8    explanation that another medical opinion is more persuasive, or criticizing it with

9    boilerplate language that fails to offer a substantive basis' for the ALJ's conclusion." *Id.*

10   (quoting *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014)); *see also Smolen v.*

11   *Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) (noting that an ALJ effectively rejects an

12   opinion when she ignores it).  As a general rule, the ALJ "can meet [her] burden by setting

13   out a detailed and thorough summary of the facts and conflicting clinical evidence, stating

14   [her] interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751.[2]

15   Plaintiff was referred to Dr. Garrison by the Arizona Department of Determination

16   Services, which processes claims for social security benefits in Arizona.  *See* Tr. 395;

17   Social Security Administration, *Disability Determination Process*, https://www.ssa.gov/

18   disability/determination.htm (last visited Jan. 20, 2022).  Dr. Garrison examined Plaintiff

19   in November 2014 and prepared a written report and a medical source statement of

20   Plaintiff's ability to do work-related activities.  Tr. 395-404, Ex. 9F.  Dr. Garrison provided

21   this diagnosis in the medical source statement:

> History of chronic neck pain secondary to degenerative disc disease of the
> cervical spine.  Claimant appears in moderate distress and has a stiff posture
> held throughout the entire exam.  Movement was very slow and weak
> appearing to the point she needed assistance with getting on and off the table
> from her boyfriend . . . .   On physical exam she demonstrates decreased

---

[2] The rules for evaluating opinion evidence changed effective March 27, 2017.  For claims filed after that date, ALJs no longer apply the "treating physician rule" or give specific evidentiary weight to any medical opinion.  *See* 20 C.F.R. §§ 404.1520c, 416.927c. The new rules do not apply in this case because Plaintiff filed her claim in 2014.  *See* Doc. 15 at 6 n.24.

1
2
3
4

cervical motion with subjective complaint of pain as 4kg of force was applied to the cervical spine. Spurling test was performed and was negative. Claimant has decreased grip strength demonstrating 2.5kg of force on the right and 2.2.kg of force on the left. The rest of the physical exam was relatively unremarkable.

5

Tr. 401.

6
7
8

With respect to Plaintiff's exertional restrictions, Dr. Garrison found that Plaintiff is limited to lifting and carrying less than 10 pounds occasionally and 3-4 pounds frequently due to cervical pain and decreased cervical range of motion and grip strength.

9
10
11
12
13
14

*Id.*[3] Dr. Garrison further found that: (1) Plaintiff's degenerative joint disease, stiff posture, difficulty moving, and occasional use of a cane limited her to standing and walking 3-4 hours in an 8-hour workday; (2) Plaintiff could sit 6-8 hours in an 8-hour workday; and (3) due to her cervical pain and difficulty moving, Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl; frequently reach, handle, finger, and feel; and has restrictions working around heights and moving machinery. Tr. 402-03.

15
16

Plaintiff argues that that the ALJ erred by failing to address Dr. Garrison's finding that Plaintiff can lift and carry less than 10 pounds. Doc. 14 at 8-11. The Court agrees.

17

The ALJ gave partial weight to Dr. Garrison's opinion, stating:

18
19
20
21
22

Evidence of decreased range of motion in [claimant's] neck and back, as well as decreased grip strength support the postural, manipulative, and environmental limitations; however, evidence of only mild findings in her shoulders and normal gait and balance without an assistive device support that she can sit, stand, and/or walk for 6 hours in an 8-hour workday, without an assistive device.

23
24
25

Tr. 693 (citing Exs. 5F/2, 3, 5; 7F/4; 9F/3-5, 7-8; 12F/1; 14F/41, 65, 77, 84, 89; 15F/1, 49; 17F/9, 11, 28, 64; 23F/20-21; 25F/94; 27F/3, 15; 29F/61; 30F/2-3; 33F/34-35; 34F/14; 35F/35, 102; 36F/12, 36, 40; 40F/6). The ALJ mentioned Dr. Garrison's finding that

26

27
28

---

[3] "Occasionally" is defined as up to one-third of an 8-hour workday, and "frequently" means one-third to two-thirds of the time. *See* Doc. 14 at 6 nn. 2-3; SSR 83-10, 1983 WL 31251, at *5-6 (Jan. 1, 1983); *Johnson v. Berryhill*, No. 16-CV-2615 BTM(JMA), 2017 WL 3478762, at *4 (S.D. Cal. Aug. 14, 2017).

1    Plaintiff is limited to lifting and carrying less than 10 pounds occasionally and 3-4 pounds

2    frequently, but did not address this exertional limitation further in giving only partial

3    weight to Dr. Garrison's opinion.  *See id.*  This omission is significant because Dr.

4    Garrison's finding regarding Plaintiff's exertional limitations would preclude her from

5    performing even sedentary work, which requires lifting and carrying 10 pounds.  *See*

6    Doc. 14 at 9.[4]  The ALJ accepted Dr. Garrison's postural, manipulative, and environmental

7    limitations based in part on Plaintiff's decreased cervical range of motion and grip strength.

8    Tr. 693.  But Dr. Garrison relied on those two findings for precisely one limitation – the

9    exertional limitation that Plaintiff can lift and carry less than 10 pounds occasionally and

10   3-4 pounds frequently.  *See* Tr. 401-03.  The ALJ provided no reason, let alone a specific

11   and legitimate one, for not accepting that exertional limitation and incorporating it into the

12   RFC assessment.  *See* Tr. 690-93; *Lester*, 81 F.3d at 830.[5]

13       Defendant asserts that the ALJ "properly rejected the less than sedentary lifting and

14   carry[ing] limitations by Dr. Garrison[,] citing to numerous medical records[.]"  Doc. 15

15   at 7.  But the ALJ did not explicitly reject that exertional limitation.  And with the exception

16   of Dr. Garrison's medical source statement (Ex. 9F), the cited records do not specifically

17   address Plaintiff's ability to lift and carry weight.  A couple of records note that Plaintiff

18   has normal grip strength (Tr. 514, Ex. 14F/89; Tr. 1900, Ex. 30F/3), but the ALJ accepted

19   Dr. Garrison's finding that Plaintiff has decreased grip strength.  *See* Tr. 693.  The cited

20   records generally support the ALJ's finding that Plaintiff has normal gait and balance

21   without use of an assistive device, which the ALJ relied on in concluding that Plaintiff can

22   sit, stand, and walk 6 hours in an 8-hour workday.  *See id.*  The cited records may support

---

24       [4] According to the Social Security Regulations, sedentary work involves "lifting no
     more than 10 pounds at a time[.]"  20 C.F.R. § 404.1567(a), 416.967(a); *see Tackett v.
25   Apfel*, 180 F.3d 1094, 1103 (9th Cir. 1999) (same); *Sawyer v. Comm'r of Soc. Sec. Admin.*,
     No. CV-20-08269-PCT-DGC, 2021 WL 6124569, at *2 n.4 (D. Ariz. Dec. 28, 2021)
26   (same); *Abraham M. v. Acting Comm'r of Soc. Sec.*, No. 2:20-CV-1357-TLF, 2021 WL
     4860373, at *7 (W.D. Wash. Oct. 19, 2021) (sedentary work means "the ability to lift 10
27   pounds maximum").

28       [5] As noted, the ALJ found that Plaintiff has the RFC to perform light work (Tr. 690),
     which requires "frequent lifting or carrying of objects weighing up to 10 pounds" and
     occasionally "lifting no more than 20 pounds[.]"  20 CFR §§ 404.1567(b), 416.967(b).

1   the ALJ's rejection of Dr. Garrison's finding that Plaintiff is able to stand and walk for

2   only 3-4 hours (Tr. 402), but the records do not show that Plaintiff is able to lift 10 pounds.[6]

3           Defendant further asserts that the ALJ may reject a medical opinion that is not

4   supported by clinical findings.  Doc. 15 at 7 (citations omitted).  But the ALJ did not reject

5   Dr. Garrison's opinion for this reason, and the Court may not affirm the ALJ's decision

6   "on a ground that the [ALJ] did not invoke in making [her] decision[.]"  *Pinto v. Massanari*,

7   249 F.3d 840, 847 (9th Cir. 2001) (citing *SEC v. Chenery Corp.*, 332 U .S. 194, 196

8   (1947)).  What is more, the ALJ *accepted* Dr. Garrison's clinical findings that Plaintiff has

9   "decreased range of motion in her neck and back, as well as decreased grip strength[.]"  Tr.

10  693.  As noted, those two findings formed the basis for Dr. Garrison's opinion that Plaintiff

11  can lift less than 10 pounds.  *See* Tr. 401.

12          Defendant notes that the ALJ gave partial weight to the opinion of a non-examining

13  physician that Plaintiff could perform light work.  Doc. 15 at 8 (citing Tr. 101-24 (Exs.

14  7A-8A), 692).  But the ALJ did not specifically rely on that opinion in deciding to give

15  only partial weight to Dr. Garrison's opinion.  *See* Tr. 693.

16          The ALJ erred in failing to account for the exertional limitation found by Dr.

17  Garrison – that Plaintiff can lift and carry less than 10 pounds occasionally and 3-4 pounds

18  frequently.  *See Garrison*, 759 F.3d at 1012 ("Where an ALJ does not explicitly reject a

19  medical opinion or set forth specific, legitimate reasons for crediting one medical opinion

20  over another, he errs."); *Daniel Joseph G. v. Comm'r, Soc. Sec. Admin.*, No. 3:18-CV-

21  01011-HZ, 2019 WL 3526349, at *8 (D. Or. Aug. 2, 2019) (finding that the ALJ erred by

22  rejecting an examining physician's 10-pound lifting limitation without explanation).  The

23  error is not harmless because the limitation would support a finding that Plaintiff is not

24  able to perform even sedentary work.

25  / / /

26  / / /

27  _____

28          [6] The ALJ cites page 102 of Exhibit 35F, but that exhibit includes only 37 pages.
    *See* Tr. 1992-2028; Doc. 13-2 at 6 (transcript index).

**B.      Plaintiff's Migraine Headaches.**

The ALJ found at step two that Plaintiff's migraine headaches are not severe. Tr. 686.  Plaintiff argues that this finding is not supported by substantial evidence.  Doc. 14 at 11-15.  The Court agrees.

According to the Social Security Regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c), 416.920(c).   "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  *Smolen*, 80 F.3d at 1290 (citations omitted).  An impairment "may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'"  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290; emphasis in *Webb*).   The severity determination at "[s]tep two, then, is 'a de minimis screening device used to dispose of groundless claims,' and an ALJ may find that a claimant lacks a medically severe impairment . . . only when [her] conclusion is 'clearly established by medical evidence.'"  *Id.* at 687 (quoting *Smolen*, 80 F.3d at 1290; SSR 85-28, 1985 WL 56856, at *2 (Jan. 1, 1985)).  Thus, the Court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established" that Plaintiff's migraine headaches are not severe.  *Id.*; *see also Young v. Colvin*, No. CV-16-02264-PHX-DGC, 2017 WL 677167, at *4 (D. Ariz. Feb. 21, 2017) ("[T]he holding of *Webb* . . . requires the Court to reverse if objective evidence suggests that Plaintiff's impairments are more than de minimis."); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.").

The ALJ found Plaintiff's migraine headaches to be non-severe because "there is little objective evidence aside from notations that [Plaintiff] has a history of migraines." Tr. 686.  The ALJ goes on to note that Plaintiff "received 3 rounds of Botox for migraines

in 2017 and 2018, [and] this treatment resulted in a 50% improvement in her symptoms." *Id.* (citing Ex. 25F).  But the ALJ does not explain why multiple rounds of Botox injections constitutes "little objective evidence" of Plaintiff's migraines and their severity.  Treatment notes show that for each round of Botox treatment Plaintiff received "150 units in 35 injection points" in the scalp and neck.  Tr. 1413, 1451.  That objective medical evidence suggests that the migraines are severe, and is contrary to the ALJ's finding that evidence shows only a "history of migraines."   Tr. 686; *see McPherson v. Comm'r of Soc. Sec. Admin.*, No. CV-20-08202-PCT-JAT, 2021 WL 3709845, at *4 (D. Ariz. Aug. 20, 2021) ("Contrary to the ALJ's characterization of the medical record, the record as a whole demonstrates that Plaintiff suffered headaches from at least March of 2016 to July of 2017 and Plaintiff was prescribed treatment for her headaches.  Such evidence is enough to meet the de minimis standard posed at step two and classify Plaintiff's headaches as severe."); *County v. Berryhill*, No. CV 16-3592 SS, 2017 WL 2505762, at *4 (C.D. Cal. June 9, 2017) ("Although the ALJ stated that he did not find the 'persistent headaches problem' itself to be 'disabling,' and noted that the headaches were 'treated with medications,' he did not satisfactorily explain why chronic, severe headaches would have no impact on Plaintiff's ability to work."); *Carroll v. Comm'r of Soc. Sec. Admin.*, No. CV-16-03443-PHX-JZB, 2018 WL 1138307, at *11 (D. Ariz. Mar. 2, 2018) (medical records showing that the claimant received injections to treat pain was enough to satisfy the de minimis step-two standard).

The ALJ also noted that Plaintiff denied having a migraine headache during certain doctor visits and various treatment notes indicate that her migraines were stable.  Tr. 686 (citing Exs. 7F/4; 14F/76, 86; 15F/7, 9, 11, 48; 23F/20; 24F/15; 25F/4; 27F/2, 15; 29F/102; 34F/3, 13; 35F/17; 36F/35; 39F/2).  But the ALJ "selected only statements that supported the non-severe determination and ignored other statements, records, and notes that indicated Plaintiff's migraine headaches were more severe."  *Sanchez v. Colvin*, No. 16cv31-LAB (BLM), 2016 WL 5937921, at *7 (S.D. Cal. Sept. 22, 2016).

1        For example, Plaintiff visited Dr. Karandish in June 2017 complaining of
2   "headaches for 7 weeks" that occurred "3-4 time[s] a week." Tr. 1459.  Plaintiff had been
3   prescribed ibuprofen and floricet for the headaches, but "was concerned about taking
4   anything [else] with all the medications she currently [was] taking."  *Id.*  In July 2017,
5   Plaintiff was diagnosed with "status migrainosus headaches with aura" and expressed an
6   interest in Botox treatment.  Tr. 1453-54.[7]  Plaintiff received her first round of Botox
7   injections "for intractable migraine headache[s]" in early August 2017.  Tr. 1451.  The
8   treatment note states that Plaintiff frequently had migraines that lasted more than 3 hours
9   and were "associated with photosensitivity, nausea, sensitivity to sound, and aura."  *Id.*
10  The migraines were "debilitating and made her want to stay in bed all day."  *Id.*; *see also*
11  Tr. 1382, 1412, 1415, 1434 (same).   Plaintiff had "tried multiple medications such as
12  butabital, floricet, and excedrin in the past, but they had not been effective."  *Id.*  Plaintiff
13  complained of "frequent headaches" shortly thereafter and was advised to seek medical
14  attention if she was "disabled by pain and . . . having trouble performing daily activities."
15  Tr. 1446; *see also* Tr. 1403, 1406 (frequent headaches).  Plaintiff sought treatment in
16  November 2017 because she had "[n]o improvements with status migraines" and had
17  experienced "more than 15 episodes." Tr. 1435.  Although the Botox injections provided
18  significant improvement, Plaintiff sought further treatment because "the headaches [were]
19  coming back" and were "consistent and throbbing."  Tr. 1434.  In March 2018, Plaintiff
20  reported "[n]o improvement with status migraines."  Tr. 1415.  Plaintiff continued to
21  complain about chronic migraines with aura through January 2019.  Tr. 1381-82.[8]

22       The ALJ correctly noted that Plaintiff did not complain about headaches during
23  every doctor visit and the headaches occasionally were stable.  Tr. 686.  But the ALJ
24  ignored the medical records showing that Plaintiff experienced migraines frequently with

26       [7] Status migrainosus is a migraine that lasts for more than 72 hours.  *See* WebMD,
27  *Migraine & Headaches, Reference*, https://www.webmd.com/migraines-headaches/status-
    migrainosus-symptoms-causes-treatment (last visited Jan. 20, 2022).

28       [8] Dr. Karandish and Dr. Askari opined that Plaintiff experiences daily headaches
    that prevent all activity and would cause her to be absent from work more than four times
    a month.  Tr. 406, 585, 1267-68, 1273-74.  Those opinions are addressed further below.

1    severe symptoms – photosensitivity, nausea, sensitivity to sound, and aura.  *See* Tr. 1451.

2    "An ALJ may not simply ignore evidence in the record that suggests a different result than

3    the one reached by the ALJ."  *Sanchez*, 2016 WL 5937921, at \*7 (citing *Gallant v. Heckler*,

4    753 F.2d 1450, 1456 (9th Cir. 1984)); *see Garrison*, 759 F.3d at 1017 n.23 ("The ALJ was

5    not permitted to 'cherry-pick' from . . . mixed results to support a denial of benefits.");

6    *Meabon v. Berryhill*, No. CV18-0532-PHX-DGC, 2018 WL 6605816, at \*5 (D. Ariz.

7    Dec. 17, 2018) ("The ALJ's citation to isolated comments by Plaintiff without considering

8    the record as a whole amounts to 'improper cherry-picking.'") (quoting *Ghanim v. Colvin*,

9    763 F.3d 1154, 1164 (9th Cir. 2014)).

10          The ALJ's failure to consider the record as a whole at step two is significant because

11   an impairment is non-severe only if it is a "slight abnormality" that has "a minimal effect

12   on an individual's ability to work."  *Smolen*, 80 F.3d at 1290.  The medical evidence does

13   not clearly establish that Plaintiff's migraines are non-severe.  *See Sanchez*, 2016 WL

14   5937921, at \*7 ("The medical evidence clearly established that during the relevant time

15   period, Plaintiff experienced recurrent severe migraine headaches that were increasingly

16   resistant to medical treatment.  As such, the Court finds that there is not substantial

17   evidence supporting the ALJ's finding at step two that Plaintiff's disability claim based on

18   his migraine headaches was 'groundless.'") (quoting *Webb*, 433 F.3d at 688); *Martin A. v.

19   Saul*, No. EDCV 18-1545-KS, 2019 WL 8108733, at \*5 (C.D. Cal. Nov. 20, 2019)

20   ("Although the record suggests that Plaintiff was headache free for an unspecified time

21   period beginning in 2015, it does not 'clearly establish' that . . . [the] chronic headaches[]

22   have no more than a 'minimal' effect on his ability to work.  To the contrary, the record

23   suggests that Plaintiff suffered from recurring debilitating headaches throughout a

24   significant portion of the alleged period of disability[.]") (quoting *Webb*, 433 F.3d at 686);

25   *Kreisher v. Colvin*, No. 2:12-cv-0530 DAD, 2013 WL 4780548, at \*4 (E.D. Cal. Sept. 5,

26   2013) (ALJ erred in finding migraine headaches non-severe at step two where the plaintiff

27   "was regularly complaining about the pain caused by her migraine headaches and was

28   being treated for that condition with medication"); *Walker v. Astrue*, No. CV 09-06738-

VBK, 2010 WL 3984771, at *5 (C.D. Cal. Oct. 5, 2010) (rejecting the ALJ's finding that the claimant did not suffer severe pain from headaches and noting that "[t]his is certainly not a case in which [the claimant] has failed to establish the minimal screening requirements necessary for a Step Two finding"); *Bakewell v. Comm'r. Of Soc. Sec. Admin.*, 360 Fed. App'x. 945, 946 (9th Cir. 2010) (ALJ erred in finding migraines non-severe where evidence showed that they were incapacitating and not controlled effectively with medication).

What is more, Plaintiff testified at the July 19, 2019 hearing that she still gets migraine headaches once or twice a week even when on Botox, the headaches last about four hours, and she needs to lay down when she gets them. Tr. 767-68. Defendant asserts that "the ALJ discounted Plaintiff's testimony for sufficient reasons[.]" Doc. 15 at 12 n.5 (citing Tr. 690). But the ALJ was required to specifically "identify what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester*, 81 F.3d at 834). The ALJ did not even mention Plaintiff's testimony about the frequency and severity of her headaches. *See* Tr. 690-92 (discussing Plaintiff's symptom testimony).

Defendant further asserts that any error at step two is harmless "because the ALJ continued in the remainder of the sequential evaluation and considered 'the combined effect of all of [Plaintiff's] medically determinable impairments, including those that are not severe[.]'" Doc. 15 at 13 (quoting Tr. 686). But the ALJ's omission of migraine headaches from the list of severe impairments is not harmless because she "did not meaningfully consider the physical limitations of the impairment in the remainder of [her] analysis." *Eitner v. Saul*, 835 Fed. App'x 932, 933 (9th Cir. 2021) (citations omitted); *see Jeremiah F. v. Kijakazi*, No. 2:20-CV-00367-SAB, 2021 WL 4071863, at *8 (E.D. Wash. Sept. 7, 2021) (explaining that "an ALJ can commit harmful error if they omit a limitation from the list of severe impairments at step two and if they fail to account for that limitation when determining the claimant's [RFC]."). In erroneously finding the migraine headaches non-severe, the ALJ concluded that they "do not contribute to limitations in performing

1   basic work activities" and therefore did not include any limitation caused by the migraines

2   in Plaintiff's RFC.  Tr. 686 (noting that because the migraine headaches were found to be

3   non-severe at step two, they "are not further addressed in this decision"); Tr. 690-92 (RFC

4   assessment); *see also* Doc. 14 at 15 (noting that Plaintiff's migraine headaches could cause

5   her to be absent from work one to two times a week).

6           This error is not harmless.  *See Eitner*, 835 Fed. App'x at 934 ("Although the ALJ

7   wrote that he considered 'the effects of pain from the possibility of' fibromyalgia in the

8   [RFC] assessment, Claimant's physical limitations (such as his reduced stamina and pain)

9   were not meaningfully reflected.  Because the ALJ failed to include all of the physical

10  limitations described by Claimant relating to his fibromyalgia, the evidence did not support

11  the RFC assessment[.]"); *Blancett v. Saul*, No. 1:20-CV-00253-SKO, 2021 WL 1736880,

12  at *6 (E.D. Cal. May 3, 2021) ("[T]he ALJ concluded at step two that Plaintiff's anxiety

13  and depression were not severe. . . .  [B]ecause the ALJ did not include or discuss any

14  functional limitations related to Plaintiff's mental impairments in determining the RFC, the

15  error was not harmless."); *Inskeep v. Colvin*, No. 3:15-CV-00759-BR, 2016 WL 3509395,

16  at *4 (D. Or. June 27, 2016) ("[T]he ALJ concluded Plaintiff's mental impairments were

17  nonsevere. . . .  This error is not harmless because the ALJ did not include any mental

18  limitations in his assessment of Plaintiff's RFC."); *Martin v. Saul*, No. 2:18-CV-02911

19  CKD, 2020 WL 1305619, at *6 (E.D. Cal. Mar. 19, 2020) (finding that the ALJ's error at

20  step two "was not harmless" because "[t]he RFC does not account for multiple limitations

21  opined by the treating specialist").

22          Because the evidence does not clearly establish that Plaintiff's migraine headaches

23  are non-severe, the ALJ's step-two determination is not supported by substantial evidence.

24  *See Webb*, 433 F.3d at 687.  And as explained above, the error is not harmless.  *See Eitner*,

25  835 Fed. App'x at 934.

26          **C.      Dr. Hojat Askari.**

27          In May 2015, Dr. Askari completed a pain questionnaire and a medical source

28  statement of Plaintiff's ability to do work-related activities.  Tr. 405-07; Exs. 10F-11F.  Dr.

1   Askari opined that Plaintiff has severe back pain and neuropathy, that any kind of

2   movement or activity makes the pain worse, and that the pain prevents Plaintiff from

3   bending, squatting, stooping, reaching, standing, or sitting.  Tr. 405.  He further opined that

4   Plaintiff has extreme exertional and postural restrictions: she can lift and carry less than 5

5   pounds; stand less than one hour in an 8-hour workday; sit for less one hour in an 8-hour

6   workday; needs to alternate standing and sitting, with additional breaks every 5 minutes;

7   needs to elevate her legs every 30 minutes; and can never climb, balance, stoop, kneel,

8   crouch, or crawl.  Tr. 406-07.  Regarding Plaintiff's headaches, Dr. Askari opined that they

9   prevent all activity, would cause Plaintiff to be absent from work more than 4 times a

10  month, and would extremely impair Plaintiff's ability to deal with work stress.  Tr. 406.

11  Dr. Askari essentially affirmed this opinion in April 2016, with the only change being that

12  Plaintiff needs to sit every 2 minutes.  Tr. 583-86; Exs. 15F/67-68, 16F/1-2.

13          Plaintiff contends that the ALJ erred in giving little weight to Dr. Askari's opinions.

14  Doc. 14 at 15-20; *see* Tr. 693.  The Court does not agree.

15          From June 2018 until March 2020, Plaintiff worked part-time as a server at Panera

16  Bread Company.  *See* Tr. 1115-18; Exs. 16D-18D.[9]  Plaintiff testified that she worked

17  3-hour shifts carrying food orders to tables.  Tr. 746-47, 765-66.  The ALJ found that

18  Plaintiff's "ability to stand and/or walk for 3 hour shifts at Panera, including carrying food

19  out from the kitchen to tables, contradicts [Dr. Askari's] opinion that she is unable to

20  perform any activity due to daily migraine headaches, is extremely limited in her ability to

21  deal with any work stress, is able to only stand and/or walk for less than one hour in an

22  8-hour workday, and needs rest breaks every 30 minutes."  Tr. 693.  These reasons for

23  discounting Dr. Askari's opinions are specific and legitimate, and are supported by

24  substantial evidence in the record – Plaintiff's own testimony and her wage and earning

25  records.  Tr. 685, 746-47, 765-66.  "Plaintiff may interpret the evidence differently,

26  but . . . the ALJ's interpretation was reasonable and supported by the record.  It is not the

27  _____

28          [9] Plaintiff's earnings from this job were under the monthly threshold for substantial gainful activity.  *See* Tr. 685 (noting that Plaintiff earned $3,342 over the course of 6 months in 2018 and $6,957 in 2019).

role of the [C]ourt to second-guess the ALJ." *Iness v. Astrue*, No. 10-CV-0398-JPH, 2012 WL 1574797, at *8 (E.D. Wash. May 3, 2012) (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)); *see Burky v. Comm'r of Soc. Sec. Admin.*, No. CV-15-08190-PCT-DLR, 2016 WL 4035738, at *3 (D. Ariz. July 28, 2016) ("[T]he Court will not disturb the ALJ's findings where his interpretation of the evidence is reasonable given the evidence in the record.") (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)).

Plaintiff notes that she was allowed to sit and rest when in pain at Panera. Docs. 14 at 18, 16 at 6 (citing Tr. 1264). But Dr. Askari opined that Plaintiff can stand and sit less than one hour in an 8-hour workday. Tr. 407, 586. Those extreme restrictions would preclude Plaintiff from working 3-hour shifts. Dr. Askari also opined that Plaintiff is limited to lifting less than 5 pounds (*see id.*), but Plaintiff was required to lift items weighing up to 15 pounds at Panera (Tr. 1264).

The ALJ did not err in discounting Dr. Askari's opinions based in part on Plaintiff's ability to work at Panera. *See Lisa L.*, 2021 WL 3663068, at *8 ("Dr. Gregory opined that Plaintiff could not sit, stand, or walk for more than two hours. In 2018, however, Plaintiff was working a job at Walmart that required her to stand for five-to-six hours. . . . Because . . . Plaintiff's work activities conflict with Dr. Gregory's opinion, the ALJ did not err by rejecting Dr. Gregory's opinion.").

The ALJ further found that the "restrictions opined are so extreme that they are not consistent with [Plaintiff] performing daily functioning." Tr. 693. The ALJ noted that Plaintiff spends time with others on a regular basis and is able to shop, prepare easy meals, drive a car, and manage finances. Tr. 687. Plaintiff asserts that the ALJ erred in citing daily activities as establishing work functionality. Docs. 14 at 18, 16 at 6. But the ALJ did not conclude that Plaintiff's daily activities show an ability to work. Instead, the ALJ found that Plaintiff's daily functioning is not consistent with the extreme restrictions identified by Dr. Askari. Tr. 693. The Court cannot conclude that the ALJ's reasoning on this point is irrational. *See Lisa L.*, 2021 WL 3663068, at *8 (the plaintiff's daily

functioning was a permissible reason to reject the treating physician's "extreme restrictions"); *Jones v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01193-PHX-SPL, 2021 WL 5504557, at *3 (D. Ariz. Sept. 22, 2021) (the ALJ did not err in giving little weight to a doctor's "extreme opinion" where it "was at odds with Plaintiff's activities of daily living"); *Kimberly O. v. Saul*, No. 1:20-CV-03042-FVS, 2021 WL 5240496, at *5 (E.D. Wash. June 2, 2021) (the ALJ properly found that "the severe limitations assessed by Dr. Tompkins were inconsistent with Plaintiff's reported activities of daily living and work activities") (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999)); *Zoran S. v. Berryhill*, No. 18-CV-07672-JSC, 2020 WL 7405737, at *4 (N.D. Cal. Dec. 17, 2020) (the ALJ "did not err in finding Dr. Jarczewski's opinion of Plaintiff's extreme limitations inconsistent with Plaintiff's activities of daily living because an ALJ may discount a physician's opinion where it is inconsistent with a claimant's level of activity") (citing *Ghanam v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014)); *Aliza W. v. Saul*, No. CV 20-09189-JEM, 2021 WL 3190902, at *5 (C.D. Cal. July 28, 2021) (noting that an ALJ properly may reject extreme limitations that are not consistent with the claimant's daily functioning) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)).

The ALJ noted that Plaintiff is "able to ambulate with a normal gait, which is not consistent with the opinion that she can never balance." Tr. 694. Plaintiff criticizes this finding because Dr. Askari opined that Plaintiff "can never **safely** balance, and the ALJ is cherry-picking the evidence of record in order to support a conclusion[.]" Doc. 14 at 19 (emphasis in original). Defendant counters that "the ALJ properly considered the evidence and . . . it is Plaintiff who is cherry picking the evidence as support for her arguments." Doc. 15 at 18. The Court agrees with Defendant.

Contrary to Plaintiff's assertion, the ALJ did not rely on her "lay impression" of the medical evidence. Doc. 14 at 20 (citing Tr. 690-91). Rather, "the ALJ simply summarized the medical evidence" in assessing Plaintiff's RFC. *Bufkin v. Saul*, 836 Fed. App'x 578, 579 (9th Cir. 2021). This was proper because "it is the responsibility of the ALJ, not the

1    claimant's physician, to determine [RFC]."  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th

2    Cir. 2001) (citing 20 C.F.R. § 404.1545); *see Bufkin*, 836 Fed. App'x at 579 (same).[10]

3            In summary, the ALJ provided specific and legitimate reasons for giving little

4    weight to Dr. Askari's opinions – reasons supported by substantial evidence.

5        **D.      Dr. Kaveh Karandish.**

6            Dr. Karandish completed headache impairment questionnaires in October 2018 and

7    January 2019, and opined that Plaintiff is unable to work.  Tr. 1267-69, 1273-75; Exs. 19F,

8    21F.  He further opined that Plaintiff has psychological limitations; needs to avoid wetness,

9    noise, fumes, gases, humidity, dust, and temperature extremes; has limited vision; cannot

10   pull, push, kneel, bend, or stoop; was likely to be off task while at work; and has symptoms

11   severe enough to interfere with attention and concentration.  *Id.*  In a medical source

12   statement regarding Plaintiff's neck and back impairments, Dr. Karandish opined that

13   Plaintiff can never lift less than 10 pounds; can sit, stand, and walk for 2 hours each in an

14   8-hour workday; needs periods of walking and unscheduled breaks; needs to elevate her

15   legs 90% of the time; has significant limitations doing repetitive reaching, handling, or

16   fingering; can never stoop and can crouch only 1% of the time; and would be absent from

17   work more than 4 times a month.  Tr. 1276-80; Ex. 22F/1-5.

18           The ALJ gave little weight to these opinions "for the reasons discussed . . . with

19   respect to Dr. Askari's opinions, including conflicting testimony and limitations being so

20   extreme that they are not consistent with the objective findings and/or everyday

21

22           [10] The ALJ noted that "an individual needs to crouch in order to sit and there is no
     evidence that the claimant has difficulty sitting; therefore, there is no support that the
23   claimant can never crouch."  Tr. 693-94.  Plaintiff asserts that an individual does not need
     to crouch in order to sit.  Doc. 14 at 19 (citing SSR 83-14 ("crouching" means "bending
24   the body downward and forward by bending both the legs and spine")).  But even if true,
     the ALJ cited crouching as merely one example of Dr. Askari's extreme restrictions.
25   Tr. 693.  The ALJ erroneously states that Dr. Askari "vague[ly]" opined that Plaintiff's
     limitations "impact her ability to do work[.]"  *Id.*; *see* Docs. 14 at 17-18, 16 at 6.  Any error
26   in this regard is harmless given the other valid reasons the ALJ provided for discounting
     Dr. Askari's opinions.  *See* Tr. 693-94; *Ford v. Saul*, 950 F.3d 1141, 1156 n.8 (9th Cir.
27   2020) ("Because the ALJ provided specific and legitimate reasons supported by substantial
     evidence to justify her rejection of Dr. Zipperman's opinion, we do not address Ford's
28   argument that other reasons provided by the ALJ were not supported by the record.")
     (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

functioning[.]"  Tr. 694 (citing Exs. 5F/2-3, 5; 7F/4; 9F/3-5, 7-8; 12F/1; 14F/41, 65, 77, 84, 89; 15F/1, 49; 17F/9, 11, 28, 64; 23F/20-21; 25F/94; 27F/3, 15; 29F/61; 30F/2-3; 33F/34-35; 34F/14; 35F/35, 102; 36F/12, 36, 40; 40F/6).  The ALJ further concluded that "the record does not support [that Plaintiff] would be off task or that her symptoms would be severe enough to interfere with attention and concentration, as evidenced by her providers consistently noting that she was in no acute distress[.]"  *Id.* (citing Exs. 1F/6; 7F/9, 22, 25, 34; 14F/10, 36-37; 15F/54; 23F/20; 25F/20, 65, 88, 107; 25F/105; 29F/32, 35, 62, 74; 33F/32; 39F/4, 7).

Plaintiff contends that the ALJ erred in this conclusion because the asserted reasons for discounting Dr. Askari's opinions are legally insufficient.  Docs. 14 at 20, 16 at 8.[11]  As explained above, however, the ALJ provided valid reasons for giving little weight to Dr. Askari's opinions.  Those reasons "apply with equal force to [Dr. Karandish's] opinions."  *John R. v. Comm'r of Soc. Sec.*, No. C19-5745 BHS, 2020 WL 1819869, at *6 (W.D. Wash. Apr. 10, 2020) (citing *Hoyt v. Colvin*, 607 Fed. App'x 692, 693 (9th Cir. 2015)).  For example, Dr. Karandish opined that Plaintiff experiences severe headaches everyday (7 days per week and 30-31 days per month), that the headaches last "all day" (24 hours), and that they "prevent[] all activity" and render Plaintiff "[i]ncapable of even 'low stress' work."  Tr. 1267-68, 1273-74.  Dr. Karandish further opined that Plaintiff can never lift even less than 10 pounds and that she would need to elevate her leg 90% of an 8-hour work day.  Tr. 1278-79.  These extreme restrictions clearly are inconsistent with Plaintiff's ability to work at Panera and her daily functioning.  The ALJ did not err in giving little weight to Dr. Karandish's opinions.[12]

/ / /

---

[11] Plaintiff does not address the medical records cited by the ALJ in discounting the opinions of Drs. Askari and Karandish.  *See* Doc. 15 at 21.

[12] Plaintiff asserts that the ALJ "has no basis for asserting an interference with attention and concentration is inconsistent with being in 'no acute distress.'"  Doc. 14 at 20-21.  Any error in this regard is harmless given the valid reasons the ALJ provided for discounting the extreme restrictions opined to by Drs. Askari and Karandish.  *See Ford*, 950 F.3d at 1156 n.8.

1

### D.      Scope of Remand.

The ALJ's decision must be vacated because it is based on legal error and is not fully supported by substantial evidence.  Defendant argues that the appropriate remedy is a remand for further proceedings.  Doc. 15 at 22-23.  Plaintiff contends that the Court should remand for an award of benefits given the "unanimous examining medical sources" whose opinions were erroneously rejected by the ALJ.  Doc. 14 at 21-22.  But as explained above, the ALJ did not err in giving little weight to the opinions of Drs. Askari and Karandish.  The Court finds that remanding the case for further administrative proceedings is appropriate.

When the ALJ denies benefits and the Court finds error, the Court "ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017).  Under a "rare exception" to this rule, the Court may remand for an award of benefits after conducting a three-part inquiry:

> The three-part analysis . . . is known as the "credit-as-true" rule.  First, we ask whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.  Next, we determine whether there are outstanding issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful.  When these first two conditions are satisfied, we then credit the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability.

*Id.* (internal quotation marks and citations omitted).

The first step of the three-part inquiry is satisfied because the ALJ erred by failing to address Dr. Garrison's finding that Plaintiff can lift less than 10 pounds and by finding that Plaintiff's migraine headaches are not severe.

With respect to the second step, outstanding issues remain because the RFC assessment must be revised and, if it is determined that Plaintiff is not able to perform past work, the ALJ must proceed to step five of the sequential evaluation process and decide whether Plaintiff can perform other available work given her revised RFC and relevant vocational factors.  *See* 20 C.F.R. § 404.1520(a)(4)(v) ("At the fifth and last step, we

consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work."); *Rogers v. Colvin*, No. ED CV 13-1294 JCG, 2014 WL 996487, at *2 (C.D. Cal. Mar. 12, 2014) ("If the ALJ determines that Plaintiff cannot return to his past work, he must continue to step five and . . . ascertain whether there is [other] work that Plaintiff can perform."); *Cavanaugh v. Colvin*, No. CV 13-1222-TUC-JAS, 2014 WL 7339072, at *6 (D. Ariz. Dec. 23, 2014) ("Here, outstanding issues remain because the ALJ must revise the RFC and then obtain the testimony of a vocational expert before making a decision at Step Five."); *Jordan v. Astrue*, No. CV-10-8065-PHX-DGC, 2010 WL 4906635, at *3 (D. Ariz. Nov. 24, 2010) ("A remand for further proceedings, including application of the vocational grids and step five evaluation, is appropriate in this case."); *Dundon v. Colvin*, No. 2:15-CV-01262-RJB-DWC, 2016 WL 825156, at *5 (W.D. Wash. Feb. 5, 2016) ("As the case did not proceed on to Step Five, there is insufficient evidence in the record to establish Plaintiff could be found to be disabled as a matter of law.  Therefore, the case should be remanded for additional proceedings.") (citing *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000); *Treichler v. Comm'r, Soc. Sec. Admin.*, 775 F.3d 1090, 1105-06 (9th Cir. 2014)).

Plaintiff asserts that the ALJ would be required to find her disabled on remand "if the improperly discredited evidence were credited as true[.]"  Doc. 14 at 21.  But "the credit as true doctrine does not apply where outstanding issues remain to be resolved on remand." *Calkins v. Colvin*, No. 2:14-CV-01877-AC, 2015 WL 5546931, at *10 n.3 (E.D. Cal. Sept. 18, 2015) (citing *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009)); *see Valencia v. Colvin*, 615 Fed. App'x 427, 429 (9th Cir. 2015) ("[W]e do not apply the 'credit-as-true' rule if we have found outstanding issues.") (citing *Treichler*, 775 F.3d at 1105).  The Court is mindful that Plaintiff applied for social security benefits nearly eight years ago and that simply providing the ALJ "another opportunity to assess improperly evaluated evidence does not qualify as a remand for a 'useful purpose[.]'"  *Paul B. v. Comm'r of Soc. Sec.*, No. C20-881 TLF, 2021 WL 4473181, at *7 (W.D. Wash. Sept. 30, 2021) (citing *Garrison*, 759 F.3d at 1021-22); *see Benecke v. Barnhart*, 379 F.3d 587, 595

(9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); Doc. 16 at 10 (same).  But as noted, no step-five determination has been made as to whether Plaintiff could make an adjustment to other work, and that determination may need to be made in order to find Plaintiff disabled.  *See* 20 C.F.R. § 404.1520(a)(4)(v) ("If you can make an adjustment to other work, we will find that you are not disabled.").[13]

The Court "must reluctantly remand the matter once again for further administrative proceedings so that the ALJ may correct the errors noted above and continue with the five-step sequential evaluation process[.]"  *Kreisher*, 2013 WL 4780548, at *8.   On remand, the ALJ shall recognize Plaintiff's migraine headaches as severe and shall consider the limiting effects of that severe impairment and Dr. Garrison's finding that Plaintiff can lift and carry less than 10 pounds in reassessing Plaintiff's RFC.  *See id.*; *Rowan v. Comm'r of Soc. Sec. Admin.*, No. CV-18-02530-PHX-JJT, 2019 WL 5541268, at *8 (D. Ariz. Oct. 28, 2019) (requiring the ALJ to find certain impairments as severe on remand); *Berg v. Berryhill*, No. 3:17-CV-05611-DWC, 2018 WL 740039, at *3 (W.D. Wash. Feb. 7, 2018) ("On remand, the ALJ is directed to consider all limitations caused by Plaintiff's migraines during each step of the sequential evaluation process.").

**IT IS ORDERED** that the final decision of the Commissioner of Social Security Administration (Tr. 670-74, 682-97) is **vacated** and this case is remanded for further proceedings consistent with this opinion.  The Clerk of Court shall enter judgment.

Dated this 26th day of January, 2022.

David G. Campbell
Senior United States District Judge

---

[13] Plaintiff notes that the vocational expert testified that an individual with Plaintiff's age, education, and the limitations opined to by Dr. Askari – lifting and carrying less than 5 pounds, sitting and standing less than one hour, and alternating positions every 5 minutes (Tr. 406-07) – would not be able to perform any available work.  Doc. 14 (citing Tr. 722). But as noted, the ALJ did not err in giving little weight to Dr. Askari's extreme opinions.